## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## WAYCROSS DIVISION

HEATHER SPURLOCK,

        Plaintiff,

    v.

ANDREW M. SAUL, Commissioner of Social
Security,

        Defendant.

CIVIL ACTION NO.: 5:20-cv-15

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Donald B. Fishman ("the

ALJ" or "ALJ Fishman") denying her claim for Child Disability Insurance Benefits.  Plaintiff

urges the Court to reverse and remand the ALJ's decision.  Doc. 14 at 22.  Defendant asserts the

Commissioner's decision should be affirmed.  Doc. 15 at 14.  For the reasons which follow, I

**RECOMMEND** the Court **AFFIRM** the ALJ's decision.  I also **RECOMMEND** the Court

**DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of

dismissal.

### BACKGROUND

Plaintiff filed an application for Child Disability Insurance Benefits on April 27, 2015,

alleging an onset date of January 1, 2005, due to Asperger's syndrome, low IQ, scoliosis, flat

feet, lower back problems, anxiety, migraines, poor motor skills, and attention deficit disorder.

Doc. 12-2 at 38 (R. 37); Doc. 12-3 at 2–13 (R. 165–76); Doc. 12-5 at 4–10 (R. 395–401).  The

ALJ initially denied Plaintiff's claim after a hearing; however, the Appeals Council remanded

the case.  Doc. 12-3 at 93–96 (R. 256–59).  On February 8, 2019, ALJ Fishman held a second

hearing at which Plaintiff, who was represented by counsel, appeared and testified.  Doc. 12-2 at

38 (R. 37).  A vocational expert ("VE") also appeared at the hearing.  Id.  ALJ Fishman found

Plaintiff was not disabled within the meaning of the Social Security Act ("the Act").  Id. at 35

(R. 34).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision,

affirming the ALJ's findings.  Id. at 2–5 (R. 1–4).

Plaintiff, born on January 20, 1995, was 24 years old when ALJ Fishman issued his final

decision and 9 years old on her alleged disability onset date.  Doc. 12-2 at 45–46 (R. 44–45).

The ALJ found Plaintiff has at least a high school education.  Id. at 45 (R. 44).

## DISCUSSION

### I.     The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition

of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or
> mental impairment or impairments are of such severity that [s]he is not only
> unable to do [her] previous work but cannot, considering [her] age, education, and
> work experience, engage in any other kind of substantial gainful work which
> exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520,

416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.

If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three.  The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to make adjustments to other work in the national economy, considering her age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff has not engaged in substantial gainful activity since the alleged onset date, January 1, 2005.  Doc. 12-2 at 41 (R. 40).  At step two, the ALJ determined Plaintiff had the following severe impairments: Asperger's

autism spectrum disorder; borderline intellectual functioning ("BIF"); obesity; and affective disorder.  Id.  However, at the third step, the ALJ determined Plaintiff's impairment did not meet or medically equal the severity of a listed impairment.  Id. at 42 (R. 41).  The ALJ found Plaintiff has the residual functional capacity to perform work at the medium work range, with the following modifications: lift 25 pounds frequently and 50 pounds occasionally; climb stairs, crawl, or kneel occasionally; frequently stoop or crouch; avoid climbing ladders or scaffolds; perform repetitive, simple procedures with a Specific Vocational Preparation ("SVP") code of 1 or 2; avoid working with the public and in public areas; and able to work with and around other employees.  Id.  At the next step, the ALJ determined Plaintiff had no past relevant work experience.  Id. at 45 (R. 44).  The ALJ concluded at the fifth and final step Plaintiff could perform the jobs of linen room attendant, day worker, and laundry worker, all of which are jobs at the medium exertional level with a SVP code of 1 or 2 and which exist in significant numbers in the national economy.  Id. at 45–46 (R. 44–45).

## II.    Issues Presented

Plaintiff asserts three enumerations of error: (1) the ALJ failed to evaluate the requirements of Listings 12.05 and 12.11; (2) the ALJ failed to properly weigh the medical opinion of Dr. Eaton, an examining physician; and (3) the ALJ relied on an inaccurate hypothetical question to the vocational expert when determining whether jobs exist in significant numbers Plaintiff can perform.  Doc. 14 at 3.

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936

F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

**IV.     Whether the ALJ Erred in his Evaluation of Listing Requirements**

Plaintiff argues the ALJ committed error because he failed to explicitly evaluate whether Plaintiff met the requirements of Listings 12.05 (intellectual disorder) or 12.11 (neurodevelopment disorder).  Doc. 14 at 12–13.  Plaintiff contends the lack of explicit analysis related to these Listings makes it impossible to know if substantial evidence supported the ALJ's findings the requirements for these Listings were not met.  Id. at 13.

Defendant avers no error was committed, however, because Plaintiff failed to prove her mental impairments meet the requirements for Listings 12.05 or 12.11.  Doc. 15 at 6.  Further, Defendant states the record provides substantial evidence to support the ALJ's findings Plaintiff did not satisfy Listings 12.05 or 12.11, even though ALJ Fishman did not explicitly discuss those Listings.  Id. at 7.

At step three of the evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity.  Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993).  Plaintiff bears the burden of showing her condition meets or equals a Listing.  Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

When considering whether Plaintiff's impairment met or equaled one of the Listings, the ALJ determined they did not meet or medically equal the severity of a listed impairment. Doc. 12-2 at 41 (R. 40).  The ALJ expressly considered the new versions of mental listings at 12.02, 12.04, and 12.10, finding Plaintiff's impairments did not meet those Listings'

requirements but did not discuss Listings 12.05 and 12.11.  Id. at 41–42 (R. 40–41).  In her pre-hearing briefs, Plaintiff did not request to be evaluated under Listing 12.05 or 12.11.[1]

As stated above, an ALJ must consider whether a claimant's severe impairments meet or medically equal the severity of a Listing at step three of the sequential process.  Davis, 985 F.2d at 532; see also Flemming v. Comm'r of Soc. Sec. Admin., 635 F. App'x 673, 676 (11th Cir. 2015) ("[A]n ALJ is required to consider the Listing of Impairments in making a decision at step three . . . ."); Prince v. Comm'r Soc. Sec. Admin., 551 F. App'x 967, 969 (11th Cir. 2014) ("[T]he ALJ must consider the Listings in making its disability determination . . . .").  A plaintiff is disabled if his impairment meets or equals a Listing.[2]  20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d).  A claimant's impairment must meet or equal all of the specified medical criteria in a particular Listing for the claimant to be found disabled at step three of the sequential evaluation.  Sullivan, 493 U.S. at 530–32.  An impairment manifesting only some of the criteria does not qualify, no matter how severe.  Id. at 530.  It is a claimant's burden at step three to prove disability.  Id. at 532–33.  The burden is a heavy one because "the [L]istings were designed to operate as a presumption of disability that makes further inquiry unnecessary."  Id. at 532.

---

[1]    While not determinative, during the June 22, 2017 hearing in this matter, Plaintiff's counsel expressly disclaimed any argument that Plaintiff's impairments met Listing 12.05.  Doc. 12-2 at 1371 (R. 136) (expressly stating Plaintiff was not arguing Plaintiff's impairments meet the old version or new version of Listing 12.05).

[2]    "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."  Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. §§ 404.1525(a)–(d)); see also 20 C.F.R. §§ 416.925(a)–(d).  "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"  Wilson, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1526(a)); see also 20 C.F.R. § 416.926(a).

Listing 12.05 provides for an award of benefits based on intellectual disability and can be satisfied by Subpart A or B.  Only Subpart B is relevant to this matter.  To meet the severity requirements of Listing 12.05B, Plaintiff must demonstrate: (1) a full scale IQ score of 70 or below or a score of 71–75 accompanied by a verbal or performance IQ score of 70 or below; (2) significant deficits in adaptive functioning currently manifested by extreme limitation in one, or marked limitation in two, of four broad mental functioning areas; and (3) evidence showing the disorder manifested before age 22.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05B.  With respect to deficits in adaptive functioning, the four areas of mental functioning an ALJ should assess are: (a) understanding, remembering, or applying information; (b) interacting with others; (c) concentrating, persisting, or maintaining pace; and (d) adapting or managing oneself.  Id.

Similarly, for Listing 12.11, which provides an award for benefits based on neurodevelopment disorders, Plaintiff must demonstrate—among other things—significant deficits in adaptive functioning currently manifested by extreme limitation in one, or marked limitation in two, of four broad mental functioning areas: (a) understanding, remembering, or applying information; (b) interacting with others; (c) concentrating, persisting, or maintaining pace; and (d) adapting or managing oneself.  See 20 C.F.R. pt. 404, Subpt. P, app. 1, § 12.11.

In this case, the ALJ did not discuss Listing 12.05 or 12.11 specifically at step three of the sequential evaluation.  However, he was not required to do so.  See Flemming, 635 F. App'x at 676 (finding an ALJ is not required to "mechanically recite" the evidence or listings considered at step three) (citing Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986)).  As the Eleventh Circuit Court of Appeals has explained, an ALJ "is required to consider the Listing of Impairments in making a decision at step three," but the failure to discuss a particular Listing "does not necessarily show that the ALJ did not consider [that] listing[.]"  Id.  "There may be an

implied finding that a claimant does not meet a listing." Hutchison, 787 F.2d at 1463. Even where an ALJ did not make a specific finding as to a particular listing, the court "may infer from the record that the ALJ implicitly considered and found that a claimant's disability did not meet a listing." Flemming, 635 F. App'x at 676; see also James v. Comm'r of Soc. Sec. Admin., 657 F. App'x 835, 838 (11th Cir. 2016) ("A finding that [claimant] lacked adaptive deficits as required under the introductory paragraph of Listing 12.05 can be implied from the ALJ's conclusion that [claimant's] prior work experience indicated that she did not have an intellectual disability.").

Here, the ALJ made findings in evaluating Listings 12.02B and 12.04B that are incompatible with a finding Plaintiff meets or equals Listing 12.05B and 12.11B, because Listings 12.02B and 12.04B use the same criteria for determining deficits in adaptive functioning as those used for evaluating Listings 12.05B and 12.11B. Compare 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02B, and § 12.04B, with § 12.05B and § 12.11 (each requiring "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning," including the ability to (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; and (d) adapt or manage oneself). That is, the ALJ's analysis under listings 12.02, 12.04, and 12.10 included whether Plaintiff's mental impairments resulted in at least one extreme or two marked limitations in a broad area of functions which are: understanding, remembering, or applying information; interacting with others; concentrating persisting, or maintaining pace; or adapting or managing herself.

The ALJ found Plaintiff did not meet Listing 12.02B and 12.04B because she has not demonstrated sufficiently severe deficits in adaptive functioning. Doc. 12-2 at 41–42 (R. 40–41). Based on these findings, it is clear how the ALJ would have ruled, and did rule, on Listings

12.05B and 12.11B.  The ALJ concluded Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation in those areas of function.  Id. at 41 (R. 40). Importantly, Plaintiff does not challenge these findings by ALJ Fishman.

The ALJ first found Plaintiff has a moderate limitation in understanding, remembering, or applying information.  Id.  This functional area relates to a claimant's "abilities to learn, recall, and use information to perform work activities."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05E1. The ALJ supported this finding with evidence from the record indicating Plaintiff can function sufficiently in this area to drive a car and care for a pet, including feeding or grooming her. Doc. 12-2 at 41 (R. 40); Doc. 12-6 at 75, 92 (R. 497, 514)

Next, the ALJ found Plaintiff has a moderate limitation in interacting with others. Doc. 12-2 at 41 (R. 40).  This area of mental functioning refers to a claimant's "abilities to relate to and work with supervisors, co-workers, and the public."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05E2.  The ALJ noted Plaintiff socialized regularly with friends and frequently with family. Doc. 12-2 at 41 (R. 40); Doc. 12-6 at 67, 77 (R. 499, 489).  The ALJ also relied on Plaintiff's appropriate behavior during examinations.  Doc. 12-2 at 41 (R. 40); Doc. 12-8 at 4–5, 93 (R. 704–05, 793).

Third, ALJ Fishman found Plaintiff has a moderate limitation regarding concentrating, persisting, or maintaining pace.  Doc. 12-2 at 42 (R. 41).  This area of mental functioning refers to a claimant's "abilities to focus attention on work activities and stay on task at a sustained rate."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05E3.  The ALJ relied on Plaintiff's aunt reporting Plaintiff spends her time reading and watching television, concluding these activities require "some degree of functioning in this area."  Doc. 12-2 at 42 (R. 41); Doc. 12-6 at 67 (R. 489).

Finally, the ALJ found Plaintiff has a mild limitation in adapting or managing herself. Doc. 12-2 at 42 (R. 41).  This area of mental functioning refers to a claimant's "abilities to regulate emotions, control behavior, and maintain well-being in a work setting."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05E4.  The ALJ noted Plaintiff can prepare her own meals and perform household chores.  Doc. 12-2 at 42 (R. 41); Doc. 12-6 at 65, 74 (R. 487, 496). Additionally, the ALJ relied on Plaintiff's ability to shop in stores and drive a car, as well as care for her own personal needs.  Doc. 12-2 at 42 (R. 41); Doc. 12-6 at 75, 92 (R. 497, 514).

Based on these findings, the Court finds substantial support in the record for the ALJ's implicit finding that Plaintiff failed to meet or equal Listings 12.05B or 12.11B.[3]  Plaintiff does not contend she has marked limitations in the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing herself. Instead, Plaintiff complains the ALJ's analysis does not reflect a sufficient review of her limitations as they relate to Listings 12.05 and 12.11.  Doc. 14 at 16.  However, the ALJ's decision demonstrates he considered the evidence and found the evidence did not show sufficiently severe symptoms to be disabling.  The Court is mindful it is not its role to reweigh the evidence or substitute its judgment for the ALJ's.  See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); Sullivan, 694 F. App'x at 671 (The court cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner.").

---

[3]     Because Plaintiff failed to demonstrate she satisfies all of the requirements of Listing 12.05B, the Court finds it unnecessary to address whether Plaintiff satisfies the other severity requirements in Listing 12.05B, i.e., whether she has a qualifying IQ score and evidence of disorder manifestation prior to age 22. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05B; see also Sullivan, 493 U.S. at 530 ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

In sum, the Court finds no error by the ALJ in failing to expressly consider Listings 12.05 or 12.11.  Even if there had been error, it would be harmless, as the ALJ made express findings regarding Plaintiff's deficits in adaptive functioning, and those findings would necessarily preclude a finding Plaintiff met or equaled Listing 12.05 or 12.11.  Accordingly, this enumeration of error is without merit.

**V.     Whether the ALJ Properly Weighed Dr. Eaton's Testimony at Step Four**

Plaintiff argues ALJ Fishman did not properly weigh Dr. Marc Eaton's opinion when the ALJ stated Dr. Eaton's conclusions were not supported by his examination findings.  Doc. 14 at 16–17 (citing Doc. 12-2 at 43 (R. 42)).  Further, according to Plaintiff, the ALJ's weighing of Dr. Eaton's opinion is not supported by substantial evidence.  Id.  Thus, Plaintiff asks this Court to remand the case so the ALJ may reweigh Dr. Eaton's opinion.  Id. at 19.

Defendant, on the other hand, argues the ALJ properly considered Dr. Eaton's opinion and his decision assigning Dr. Eaton's opinion little weight is supported by substantial evidence.  Doc. 15 at 9–11.  Ultimately, Defendant asserts the record fails to support the limitations found by Dr. Eaton, and thus, substantial evidence supports the ALJ's evaluation of Dr. Eaton.  Id. at 12.

The ALJ gave "little weight" to Dr. Marc Eaton's conclusions regarding Plaintiff's functional limitations, finding Dr. Eaton's opinions were not consistent with the objective findings on exam.  Doc. 12-2 at 42 (R. 41).  Dr. Eaton examined Plaintiff once in 2013 and once in 2015, but Dr. Eaton was not Plaintiff's treating physician, doc. 12-8 at 166–173 (R. 866–873); doc. 12-9 at 32–38 (R. 917–923), and, therefore, his medical opinion is not entitled to substantial or considerable weight.  Battles v. Comm'r, Soc. Sec. Admin., 749 F. App'x 920, 923 (11th Cir. 2018).  However, the opinions of examining physicians are generally given more weight than

non-examining physicians unless "good cause" is shown.[4]  20 C.F.R. § 404.1527(d); Poellnitz v. Astrue, 349 F. App'x 500, 502 (11th Cir. 2009).  Good cause exists to discredit a physician's testimony when it is contrary to or unsupported by the evidence of record or it is inconsistent with the physician's own medical records.  Poellnitz, 349 F. App'x at 502 (citing Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004)); see also Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (finding good cause exists to discount a treating physician's opinion when it is not bolstered by the evidence, supported a contrary finding, or the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records).

Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error.  Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).  Put differently, to properly discredit a treating or examining physician's opinion, the ALJ must articulate specific reasons for doing so, and those reasons must be supported by substantial evidence.  Poellnitz, 349 F. App'x at 502; see also O'Bier v. Comm'r of Soc. Sec. Admin., 338 F. App'x 796, 798 (11th Cir. 2009) ("The ALJ must state with particularity the weight given the different medical opinions and the reasons therefor.") (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)).  Indeed, an ALJ may entirely discredit an examining physician's opinion, but he or she must explain themselves accordingly.  Turner v. Colvin, No. 1:12-cv-2220, 2013 WL 5411685, at *5 (N.D. Ala. Sept. 26, 2013) (citing Syrock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985)).

---

[4]      Notably, "[t]he opinions of non-examining, reviewing physicians, when contrary to the opinions of the examining physicians, are entitled to little weight."  Fleming v. Comm'r Soc. Sec. Admin., 550 F. App'x 738, 739 (11th Cir. 2013).

Where the record contains incompatible medical opinions relating to a claimant's allegedly disabling conditions, then the ALJ's obligation to specify the weight given to such differing proof becomes more important.  Hayes v. Colvin, No. 4:12-cv-809, 2013 WL 4804222, at *8 (N.D. Ala. Sept. 6, 2013) (citing Hudson v. Heckler, 755 F.2d 781, 786 (11th Cir. 1985); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).  The ALJ's duty does not end at merely assigning weight to conflicting opinions.  If the ALJ finds an examining physician's opinion is inconsistent with the record as a whole, he must "explicitly set forth his rationale for doing so"; the "failure to explain how [an examining physician's] opinion [is] inconsistent with the medical evidence renders review impossible and remand is required."  Paltan v. Comm'r of Soc. Sec., No. 6:07-cv-932, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008) (internal quotation omitted) (citing Sharfarz, 825 F.2d 278).  Similarly, an ALJ lacks good cause to reject an opinion if he merely isolates certain portions of a medical opinion without taking those portions in context.[5]  See Fleming v. Comm'r, Soc. Sec. Admin., 550 F. App'x 738, 740 (11th Cir. 2013) (citing Sharfarz, 825 F.2d at 280).  "While an ALJ is not required to summarize the entire record in his or her decision to support his or her findings, a physician's opinion regarding [p]laintiff's limitations cannot be discredited by simply citing to partial references to the physician's notes, which taken in isolation and out of context, contradict the overall opinion of

---

[5]      In Sharfarz, a treating doctor opined the claimant was "totally incapable" of substantial gainful employment based on "generalized severe osteoarthritis with pain and limitation of motion in multiple joints."  Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).  Nevertheless, the ALJ rejected the doctor's opinion based on a medical report from one specific day where the doctor reported the claimant was "significantly better," had decreased pain, a paraspinal muscle spasm had resolved, and the doctor instructed the claimant to use Motrin and return on an as needed basis.  Id.  The Eleventh Circuit Court of Appeals held this was not good cause to discount the doctor's opinion because the "significantly better" statement and accompanying notes referred to the claimant's condition on the preceding visit, when the claimant had exacerbated pain and could not walk without assistance, and the doctor opined seven months after that visit the claimant was still incapable of working.  Id.

the same physician." Sherwood v. Berryhill, No. 8:16-cv-2762, 2018 WL 1341743, at *5 (M.D. Fla. Feb. 27, 2018) (internal citation omitted) (citing Dyer, 395 F.3d at 1210–11; Fleming, 550 F. App'x at 740).

Here, the ALJ identified the limited weight he gave to Dr. Eaton's conclusions regarding Plaintiff's functional limitations and provided reasons for the weight assigned. When assigning Dr. Eaton's opinion little weight, ALJ Fishman explained Plaintiff's earlier IQ testing demonstrated she was in the low average range to borderline intellectual function range, rather than the lower score when examined by Dr. Eaton. Doc. 12-2 at 43 (R. 42). The ALJ further determined Dr. Eaton's assessment of Plaintiff in the borderline range conflicted with her full-scale IQ score of 67. Id. Additionally, the ALJ explained Plaintiff's mental status examinations were largely normal and she was able to understand simple instructions, again at odds with Dr. Eaton's conclusion that Plaintiff has significant limitations. Id. Though Plaintiff argues Dr. Eaton's opinion is supported by the record, she does not address the specific reasons ALJ Fishman gave for discounting Dr. Eaton's opinion. Doc. 14 at 16–17. Put another way, Plaintiff does not address whether the ALJ's findings are contrary to the record, instead arguing only "Dr. Eaton's examination findings support his conclusions." Id. at 17.

The weight assigned and reasons given by ALJ Fishman are supported by the record. The ALJ criticized Dr. Eaton's findings because his assessment of "significant limitations" is contrary to his actual findings. Doc. 12-2 at 43 (R. 42). Dr. Eaton's examination notes state Plaintiff was able to understand simple instructions and execute them without difficulty. Doc. 12-8 at 171 (R. 871). Dr. Eaton also stated it was likely Plaintiff, on a "practical basis" functions intellectually in the "borderline range," rather than the lower range indicated by her IQ test score. Id. Yet, Dr. Eaton concluded Plaintiff suffered from significant functional

limitations.  Thus, the ALJ's criticism that Dr. Eaton's findings of "significant limitations" are contrary to his findings is supported by the record.  In addition, the ALJ noted Dr. Eaton's 2015 examination varied from other examination findings.  Mental health records from 2017 and 2018 note normal findings and support the ALJ's conclusion.  Doc. 12-10 at 112–13, 132–33, 151–52 (R. 1218–19, 1238–39, 1257–58); Doc. 12-11 at 196–97, 209–10, 221–22 (R. 1571–72, 1584–85, 1596–97).  ALJ Fishman also listed earlier IQ scores in a higher range as a reason for discounting Dr. Eaton's opinion.  Again, this conclusion is supported by the record.  Though Plaintiff had a full-scale IQ score of 67 when examined by Dr. Eaton, in another examination Plaintiff had a full-scale IQ score of 78.  Doc. 12-8 at 5 (R. 705).  Thus, it is clear from the ALJ's decisions he considered Dr. Eaton's opinion, and substantial evidence supported giving little weight to his opinion.

**VI.      Whether the ALJ Presented an Accurate Hypothetical**

Plaintiff argues the ALJ improperly used the vocational expert ("VE") at the hearing because the ALJ's hypothetical question did not accurately report Plaintiff's educational level. Doc. 14 at 19–22.  Defendant disagrees.  Doc. 15 at 12–14.

At step four of the sequential evaluation process, the ALJ found Plaintiff had no past relevant work experience.  Doc. 12-2 at 45 (R. 44).  Additionally, ALJ Fishman found Plaintiff had at least high school education.  Id.  Because Plaintiff had no past relevant work experience, the burden shifted to the Commissioner to show the existence of other types of substantial gainful employment Plaintiff could perform given her age, education, and residual functional capacity.  In this regard, the ALJ properly consulted VE Giedl in conjunction with the Medical-Vocational Guidelines.  At Plaintiff's hearing, the ALJ submitted the following hypothetical to VE Giedl.

> Now assume, Ms. Giedl, that we have an individual who at all relevant times at age 24, has a twelfth-grade special education.  And, I'm going to say no past relevant work according to this.  She worked three to four days a week about four hours a day.  This individual would be able to lift 50 pounds occasionally, 25 pounds frequently.  No limits on sitting, standing, and walking; should avoid climbing ladders and scaffolds; could occasionally climb stairs; frequently stoop, crouch; occasionally crawl and kneel.  This individual would be able to perform repetitive, simple procedures normally found with SVP 1 and 2.  This individual should avoid working with the public and in public areas; would be able to work with and around other employees.  Would this individual be able to perform any other work that exists in the national or local economies?

Doc. 12-2 at 126–27 (R. 125–26).  The VE testified such an individual would be capable of performing work as a linen room attendant, day worker, and laundry worker, each of which has an SVP of two.  Id. at 127–28 (R. 126–27).  Plaintiff's attorney modified the hypothetical by asking if the vocational expert's answer would change if "one-on-one supervision throughout the day" was necessary to perform the jobs identified.  Id.  at 128 (R. 127).  VE Giedl responded such a hypothetical individual would not be able to perform the jobs she had previously identified and, further, such a hypothetical individual would not be able to sustain competitive employment.  Id.

Plaintiff specifically takes issue with the ALJ's description of Plaintiff's educational level—12th grade special education—in the hypothetical posed to VE Giedl.  Doc. 14 at 19.  Plaintiff argues, while she completed 12 years of school and received a vocational diploma, the ALJ's characterization is inaccurate.  Id.  Plaintiff represents her educational records indicate she completed core subjects only through eighth grade.  Id. at 19–20.  Instead, Plaintiff avers the most generous reading of her educational records indicate she has an eighth-grade special education level and a vocational diploma.  Doc. 16 at 6.

However, Defendant contends substantial evidence supports the ALJ's hypothetical question to the VE.  Doc. 15 at 13.  Further, the VE testimony indicates she was aware of

Plaintiff's special education history and vocational background.  Id. at 14.  Finally, Defendant asserts Plaintiff fails to meet her burden of proving she could not perform the presentative occupations the VE identified.  Id.

The underlying assumptions of hypothetical questions must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence.  McSwain v. Bowen, 814 F.2d 617, 619–20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562–63 (11th Cir. 1985); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."), overruled on other grounds by Washington v. Comm'r of Soc. Sec., 906 F.3d 1353 (11th Cir. 2018); Coleman v. Barnhart, 264 F. Supp. 2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations, including that a claimant "often" has deficiencies in concentration, persistence or pace, is grounds for remanding case for further proceedings).

Here, Plaintiff points to her school records to show she does not have a 12th-grade special education.  At the hearing, Plaintiff testified she completed 12th grade in special education.  Doc. 12-2 at 121–22 (R. 120–21).  Plaintiff submitted her vocational diploma from Charlton Christian Academy.  Doc. 12-6 at 208 (R. 630).  Additionally, a letter from Charlton Christian Academy confirms Plaintiff graduated with a vocational diploma, which only requires students to advance through the eighth-grade level in the core subjects of math, English, social studies, science, and spelling.  Doc. 12-7 at 3 (R. 632).  The letter also states the school does not have a special needs program, id.; however, Plaintiff received one-on-one help from a classroom aide, id. at 5 (R. 634).  Testing while Plaintiff was in enrolled in 9th, 10th, and 11th grades at

Charlton Christian Academy indicated Plaintiff was below grade level.  Id.  Plaintiff contends these records show she has "at best" an eighth-grade special education level, and the ALJ posed an inaccurate hypothetical to the VE.  Doc. 14 at 20.

Importantly, none of the evidence Plaintiff points to in the record states she was not enrolled in 12th grade.  In fact, in Plaintiff's own brief, she states she "completed school through the [12]th grade."  Doc. 14 at 22.  This representation also matches the testimony Plaintiff gave at the hearing, where she stated she completed 12th grade in special education.  Doc. 12-2 at 121–22 (R. 120–21).  Moreover, the limitations Plaintiff posits show she does not have a 12th-grade education—being below grade level, needing additional support—are captured by the ALJ including special education in the hypothetical.  That is, the ALJ's hypothetical accurately describes Plaintiff's educational level.  Baez v. Astrue, No. 8:07-CV-1653, 2008 WL 4296556, at *3 (M.D. Fla. Sept. 19, 2008) (finding no error where the hypothetical question accurately reflects Plaintiff's education level).

Significantly, Plaintiff was represented at the hearing by an attorney, who was given an opportunity to question the VE.  Doc. 12-2 at 128 (R. 127).  If Plaintiff's counsel had any doubt whether the hypothetical accurately reflected Plaintiff's educational level, the attorney could have simply asked the VE.  See Jones v. Apfel, 190 F.3d at 1228 (explaining once the expert identifies jobs the claimant can perform, the burden switches to the claimant to prove she is unable to perform those jobs.).  However, Plaintiff's attorney did not cross-examine the expert regarding Plaintiff's educational level.

Accordingly, the hypothetical to the vocational expert included all the impairments and limitations the ALJ found credible based on the evidence of record.  This enumeration of error lacks merit.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **AFFIRM** the ALJ's decision.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 22nd day of February, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA